UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ALLEN ZAURIL FORD,

               Plaintiff,

v.

UNKNOWN GAUTHIER et al.,

               Defendants.

_____/

Case No. 1:25-cv-957

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court previously granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 8.)

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## **Discussion**

### I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about

which he complains, however, occurred during his pretrial detention at the Berrien County Jail and before his pretrial detention. Plaintiff sues the following Defendants: the State of Michigan; Michigan Attorney General Dana Nessel; the Michigan State Police and Officer Unknown Vonkoenig; the County of Berrien; the Berrien County Sheriff's Department and Detectives Unknown Gauthier and Shawn Yech; the Berrien County Prosecutors Office and Prosecutors Jeffery Taylor, Cortney C. Omalley-Septoski, and Taylor Koch; the Public Defender's Office and Attorneys Christopher Page and Donald Sappanos; the Southwest Enforcement Team; the Fifth District Court in Benton Harbor, Michigan; the Berrien County Circuit Court, Judges Gordon G. Hosbein and Arthur J. Cotter, and Clerk Sharon J. Tyler; and Wayne County Circuit Court Judge Charles S. Hegarty.

Plaintiff alleges that each of the Defendants played an "illegal" role in his criminal prosecution. During the summer of 2021, a Berrien County Circuit Court jury convicted Allen Zauril Ford of possession with intent to deliver less than 50 grams of fentanyl, second offense, in violation of Mich. Comp. Laws § 333.7401(2)(a)(iv); maintenance of a drug house, second offense, in violation of Mich. Comp. Laws § 333.7405(1)(d); felon in possession of a firearm (felon-in-possession), in violation of Mich. Comp. Laws § 740.224(f); and three counts of possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. The crux of Plaintiff's complaint is that he was illegally convicted.

The facts related to that prosecution were set out by the Michigan Court of Appeals in an opinion affirming Plaintiff's convictions as follows:

> In June 2020, the Michigan State Police Southwest Enforcement Team executed a search warrant at a Benton Harbor residence. Ford slept in the northwest bedroom of that home with his girlfriend, Ashley Walton. In that room, the searching officers found evidence of narcotics activity and a handgun. The officers found no evidence of criminal activity anywhere else in the house.

2

In the northwest bedroom, the officers also found a digital scale coated with white residue on top of a dresser. That residue later tested positive for methamphetamine, cocaine, and fentanyl. Detective Jeremiah Gauthier testified that drug users do not commonly use a scale and do not commonly mix meth, cocaine, and fentanyl together, but drug dealers do. Next to the scale was a credit card, rolled up coins, and two $20 bills. Detective Gauthier testified that a credit card is commonly used by dealers to measure an exact amount or by users to make lines. Detective Gauthier also testified that users commonly use paper bills to snort controlled substances, but that these $20 bills did not bear traces of controlled substances.

On top of a cabinet, the officers found an unopened black shoebox. Inside was a pair of shoes in Walton's size. A handgun rested on top of the shoes. Inside the cabinet, the officers found white powder stored in a piece of paper topped by tissue paper. Most of the powder was loose and had spilled onto the shelves. The powder later tested as fentanyl and weighed 0.058 grams.

Inside the bedroom closet, the officers found a safe and a pile of shoeboxes. The safe contained $4,020 and two baggies containing 0.633 grams of fentanyl. Detective Gauthier testified that the average dose a user purchases is a tenth or two tenths of a gram and that a user usually does not purchase more than two doses at a time. A clear plastic bag with a corner missing rested on top of the shoeboxes. Detective Gauthier surmised that this was leftover packaging material. The officers found no other paraphernalia associated with drug use and no other packaging materials in the bedroom.

As other officers searched the remainder of the residence, Detective Gauthier interviewed Ford and Walton. Ford waived his Miranda1 rights and voluntarily spoke with the detective. Ford indicated that the controlled substances and related items inside the bedroom belonged to him. According to Detective Gauthier, Ford also stated that there was a stolen handgun in a shoebox inside the bedroom. At trial, Ford denied knowing that there was a handgun in his bedroom, let alone a stolen handgun in a shoebox. Detective Gauthier found $147 in Ford's front pants pocket. Detective Gauthier inquired, "I'm assuming that the money in your pocket is from selling dope." Ford responded with a "nonverbal head [nod]" and then stated that "the money in his safe was not from selling drugs, [because] it was from unemployment." When Detective Gauthier asked a second time whether "the money in [his] pocket is from selling dope," Ford again nodded and confirmed that "yes, that's dope money."

Detective Gauthier also interviewed Walton. He described that Walton admitted to witnessing Ford selling controlled substances from the residence. However, Walton denied making that statement at trial. At trial, Detective Gauthier testified as an expert in the sale and distribution of controlled substances. He described that a dealer commonly keeps sale proceeds close to the product. He explained that the amount of fentanyl found during this search is an amount typically purchased for the purpose of sale and distribution. He then explained that dealers often keep a firearm in close proximity to their product and proceeds for protection. Placing the

3

gun in a shoebox kept it adequately hidden while easily accessible. Detective Gauthier further testified that a gram of heroin sells for between $140 and $150, and a gram of either cocaine or meth sells for between $100 and $120. He therefore deduced that the $147 in Ford's pocket was from selling one gram to a customer.

Ford testified at trial and explained that he was a drug user, not a dealer. He claimed that earlier in the day, a dealer had brought a sample to the house and Ford did a line on the dresser next to the digital scale. That dealer was scheduled to return with a gram to sell and Ford kept the purchase money in his pocket. Ford admitted that he normally purchased a gram or two at a time and used his digital scale to confirm the weight. Even though he was still intoxicated when he spoke to Detective Gauthier, Ford testified that he did not physically nod his head in affirmation when asked whether the $147 was from selling controlled substances.

Ford then explained that he wanted to return the two baggies of fentanyl found in the safe to his dealer. He only used cocaine and marijuana, not meth or fentanyl. The COVID-19 pandemic created a scarcity of controlled substances that led dealers to sneak in other substances. He bought what he believed was cocaine, but he received cocaine cut with fentanyl. He stored the two baggies in his safe to return for a refund. Detective Gauthier testified that if a user wanted to return a purchase, the normal procedure is to call the dealer and complain right away.

Walton also testified for the defense. She claimed ownership of the handgun in the shoebox. She explained that she kept the handgun in her shoebox on top of the cabinet to keep it out of the reach of children in the home. Although Walton shared the bedroom with Ford, Ford kept most of his belongings in a different room. However, Walton admitted that the controlled substances and related items belonged to Ford.

At the close of trial, the jury convicted Ford of various charges against him, but acquitted him of possession of meth and cocaine.

*People v. Ford*, No. 359829, 2023 WL 324773, at *1–2 (Mich. Ct. App. Jan. 19, 2023).

Plaintiff does not specifically ask the Court to overturn his convictions or release him from incarceration. Instead, Plaintiff asks the Court to issue a declaratory judgment that each Defendant, by their actions relating to Plaintiff's criminal prosecution, violated Plaintiff's due process rights. (Compl., ECF No. 1, PageID.28–30.) Plaintiff also seeks hundreds of thousands of dollars in compensatory and punitive damages for unlawfully depriving Plaintiff of his liberty. (*Id.*, PageID.30–31.)

4

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

## III.    Plaintiff's Claims for Relief are Barred by the *Heck* Doctrine

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

5

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff alleges violations of several constitutional rights; but his claim of due process violations lies at the very heart of his requests for relief.

Plaintiff's complaint suggests that the many procedural flaws related to his criminal prosecution deprived the trial court of subject matter jurisdiction. (Compl., ECF No. 1, PageID.9.) Plaintiff specifically states that the judgment of sentence was illegal.because of the jurisdictional defects. (*Id.*, PageID.18.) Thus, Plaintiff's complaint is "challenging the legality of his [convictions] and sentence." *Georgacarakos v. Ormond*, 697 F. App'x 443, 445 (6th Cir. 2017).

When a prisoner challenges the fact or duration of his confinement based upon an allegedly invalid conviction or sentence, his sole remedy is a petition for habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody); *see also Heck v. Humphrey*, 512 U.S. 477, 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of [42 U.S.C.] § 1983."). The Sixth Circuit recently elaborated on when a prisoner must use habeas corpus under these authorities:

> A clear and consistent two-part rule emerges from this precedential backdrop. Prisoners can "use only habeas corpus" if "they seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson* [*v. Dotson*], 544 U.S. [74,] 81, 125 S. Ct. 1242 [(2005)].

*Kitchen v. Whitmer*, 106 F.4th 525, 539 (6th Cir. 2024).

Although Plaintiff does not explicitly seek release, his argument concerning the lack of subject-matter jurisdiction necessarily implies "the unlawfulness of the State's custody" over him.

Thus, Plaintiff must pursue the relief he seeks in a habeas corpus petition. Moreover, the Supreme Court has held that claims for declaratory relief and monetary damages that necessarily imply the invalidity of the punishment imposed are not cognizable under Section 1983 until the conviction or sentence has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The *Edwards* Court relied upon *Heck*, which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original) (citing Heck, 512 U.S. at 486–87). As the Supreme Court has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson*, 544 U.S. at 81–82.

Here, Plaintiff seeks declaratory and monetary damages on the premise that the judgment of sentence entered by the Berrien County Circuit Court was invalid. Unless and until that judgment is invalidated, Plaintiff cannot obtain the relief he seeks. Therefore, Plaintiff has failed to state a claim upon which relief may be granted,[1] and his complaint is properly dismissed.

---

[1]A court's dismissal of a claim on the basis that it is barred by *Heck v. Humphrey* is properly considered a dismissal under 28 U.S.C. § 1915(g) because it fails to state a claim on which relief can be granted. *Kitchen*, 106 F.4th 525, 534 n.4 (6th Cir. 2024) (stating "[o]ur court, following the Supreme Court's lead, has phrased *Heck* challenges in terms of whether a § 1983 claim is 'cognizable,' which likely implies that a *Heck* challenge more properly sounds in failure to state a claim").

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.


Dated:  __August 4, 2026__          /s/ Robert J. Jonker
                              Robert J. Jonker
                              United States District Judge

8